# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| _____ | : | |
| KENNETH SHANNON, | : | |
| | : | |
| Plaintiff, | : | Civil No. 10-04524 (RBK/KMW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| B.L. ENGLAND GENERATING | : | |
| STATION, ROCKLAND CAPITAL, RC | : | |
| CAPE MAY HOLDINGS, LLC, JOHN | : | |
| DOE (1-10), and XYZ CORP. (1-10) | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| | : | |
| B.L. ENGLAND GENERATING | : | |
| STATION, ROCKLAND CAPITAL, RC | : | |
| CAPE MAY HOLDINGS, LLC | : | |
| | : | |
| Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| INDUSTRIAL PROCESS SOLUTIONS | : | |
| AND TRAVELERS INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Third-Party Defendants. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Third-Party Defendant Industrial

Process Solutions ("IPS") for summary judgment, and on a motion by Third-Party Defendant

Travelers Insurance Company ("Travelers") for summary judgment. Third-Party Plaintiffs B.L.

England Generating Station ("B.L. England"), Rockland Capital, and R.C. Cape May Holdings, LLC ("R.C. Cape May") have filed a joint cross-motion for summary judgment. Because both summary judgment motions, as well as the cross-motion, relate to the same underlying events and the same contractual provisions, they are considered jointly. For the reasons expressed below, the motions of IPS and Travelers will be **GRANTED**, and the motion of the third-party plaintiffs will be **DENIED**.

## I.      BACKGROUND

On May 21, 2010, Plaintiff Kenneth Shannon was injured while working as an employee of IPS at the Marmora, New Jersey generating station plant of B.L. England. After completing work on an air drying compressor, Shannon alleges that he tripped over a metal strut that protruded out of the floor. As a result, he fell to the ground and sustained fractured bones and other serious injuries. Mr. Shannon was at the B.L. England plant to perform work pursuant to a Purchase Order Agreement (the "Agreement") between IPS and R.C. Cape May, which is evidently a corporate entity related to B.L. England.[1] On September 3, 2010, Shannon filed suit against B.L. England and the other defendants, seeking damages for his injuries that he alleges

---

[1] As IPS points out in its Reply Brief, it is unclear what the corporate relationship is between B.L. England, Rockland Capital, and R.C. Cape May Holdings. See IPS Reply at 4. The Agreement at issue is between IPS and "RC Cape May Holdings, LLC, B.L. England Plant." IPS Mot. Ex. E. The Court observes that the relationship is not apparent from any material in the complaint, answer, third-party complaint, or any of the motion papers relevant to the summary judgment motions. The amended complaint alleges that all three entities had the B.L. England plant premises "under their care, direction, supervision, control and maintenance." Am. Compl. at 3. These third-party plaintiffs apparently have a common interest in this litigation, as they are all represented by the same counsel. For the reasons expressed in this Opinion, it is not necessary to address the contention of IPS that there has been no evidence that IPS owes any duty to the B.L. England or Rockland Capital entities. IPS Reply at 4. In their papers, the parties appear to use "B.L. England" to refer to the third-party plaintiffs collectively at times. In the course of this Opinion, when the Court refers to "B.L. England," it incorporates the other two entities to the extent that they may have rights under the Agreement or insurance policy.

resulted from their negligence.  Plaintiff does not allege that he was injured as a result of any

negligence by IPS, and IPS was not named in Plaintiff's amended complaint.

Pursuant to the Agreement, IPS agreed that it would "defend, indemnify and hold

harmless" B.L. England from all claims, liabilities and other potential losses "arising out of or

relating to . . . any act or omission of [IPS] or its employees, contractors and agents in the

performance of the Services, including any claim arising out of [IPS's] failure to comply with

applicable laws, rules, regulations or orders . . . ."  IPS Mot. Ex. E ¶ 11.  The Agreement also

provided that "at any and all times during the term of this Agreement, [IPS] shall . . . procure and

maintain in full force and effect . . . sufficient insurance . . . to protect [IPS] and [B.L. England]

from third-party claims arising out of or connected with the performance of the work."  Id. at Ex.

E ¶ 6(b).

Pursuant to the Agreement, IPS obtained an insurance policy ("The Policy") from

Travelers.  IPS was listed as a "named insured" under the Policy.  IPS Mot. Ex. G.  The Policy

also indicated that it would include as an insured "any person or organization that you agree in a

'written contract requiring insurance' to include as an additional insured on this Coverage Part"

for liability arising from bodily injury, property damage or personal injury.  Id.; see Travelers Br.

at 2.  The policy provided that such "additional insured" coverage applied:

> only to the extent that, the injury or damage is caused by acts or omissions of you or your
> subcontractor in the performance of "your work" to which the "written contract requiring
> insurance" applies.  The person or organization does not qualify as an additional insured
> with respect to the independent acts or omissions of such person or organization.

IPS Mot. Ex. G; Travelers Br. at 2.

3

On August 14, 2012, B.L. England, Rockland Capital, and R.C. Cape May filed a third-party complaint against third-party defendants IPS and Travelers Insurance Company. B.L. England alleges that it entered into a Purchase Order Agreement with IPS for service, repair and maintenance to its air drying compressor units, and that the contract provided for IPS to indemnify B.L. England, and to provide insurance liability coverage, for all actions arising from the work done by IPS pursuant to the contract. In the third-party complaint, the third-party plaintiffs allege that they are entitled to insurance coverage and indemnification for Shannon's injury claim (the "Shannon claim") pursuant to the Agreement. They also allege that Travelers, who provides liability coverage to IPS, has a duty to provide liability coverage to it for the Shannon claim, and that Travelers has refused to do so. IPS asks the Court to grant summary judgment and to dismiss B.L. England's Third-Party Complaint and all cross-claims with prejudice. Travelers asks for the same relief. B.L. England opposes these motions, and in its cross-motion for summary judgment, seeks a finding that IPS had a duty to provide insurance coverage to B.L. England, and that Travelers has a duty, through its insurance policy with IPS, to provide insurance coverage for the Shannon claim.

## II.     STANDARD FOR SUMMARY JUDGMENT

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact.  Anderson, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  Id. at 255; Matsushida, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment.  Anderson, 477 U.S. at 256.  The nonmoving party must at least present probative evidence from which jury might return a verdict in its favor.  Id. at 257.  The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III.   CHOICE OF LAW

A federal court sitting in a diversity case must "apply the substantive law of the state whose laws govern the action."  Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1365 (3d Cir. 1993) (citations omitted).  In their original briefs, all parties assumed, without discussing the issue, that New Jersey law applies to all aspects of this dispute.  The Court asked the parties to submit supplemental briefs on the question of what substantive law the Court should apply.[2]  The Court observed that the parties are citizens of different states and that the Agreement at issue in

---

[2] See ECF Docket No. 65.  The supplemental briefs of the parties are located at ECF Docket Nos. 66-68.

this litigation contains an arbitration clause that indicates in part that "[t]his Purchase Order and any controversy relating to this Purchase Order shall be governed by the laws of the State of New York, excluding its conflict of law principles."  IPS Mot. Ex. E ¶ 17.

In order to determine which state's substantive law to apply, a federal court exercising diversity jurisdiction will apply the conflict of law rules of the forum state.  Bayer Chems. Corp. v. Albermarle Corp., 171 F. App'x 392, 398 (3d Cir. 2006).  New Jersey generally upholds choice-of-law clauses, so long as the clause "does not violate New Jersey's public policy." North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 158 N.J. 561, 568-69 (1999) (internal citations omitted).  When there is a choice-of-law provision, the court must first determine whether there is an "actual conflict" between the laws of the two states.  Kramer v. Ciba-Geigy Corp., 371 N.J. Super 580, 597 (App. Div. 2004).  If there is an actual conflict, the Court must determine whether the choice-of-law provision in the conflict will still be enforced, unless:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

North Bergen Rex, 158 N.J. at 568-69 (quoting Instructional Sys., Inc., 130 N.J. 324, 342 (1992)).

**A.  Necessity of a Choice-of-Law Analysis**

In their supplemental briefs, all parties take the position that New Jersey substantive law applies. Because some parties take the position that there is no issue requiring analysis under New Jersey's choice-of-law rules, it is necessary to first examine that issue.

IPS takes the position that the choice-of-law provision in favor of New York law in paragraph 17 of the Agreement is limited in application to the context of an arbitration proceeding. <u>See</u> IPS Supp. Br. (ECF Docket No. 66) at 1-2. They point to paragraph 8, which provides for the application of California law to forms used to release liens, and argue that this shows that no provision was intended to govern choice-of-law for the entire contract. <u>Id.</u> at 2-3. B.L. England took the position that the selection of New York law does not apply because the choice of law clause applies to "any controversy relating to this purchase order," and because this suit is a personal injury action, it does not arise out of the purchase order. <u>See</u> B.L. England Supp. Br. (ECF Docket No. 67) at 1-2. Travelers suggests that there is no choice-of-law issue because none of the parties asserted that New York law applies in its original papers. Travelers Supp. Br. (ECF Docket No. 68) at 2. They also argue that the selection of New York law was purely arbitrary and thus should not be enforced. <u>Id.</u> at 5-6.

Further, IPS and B.L. England argue that the result would be the same under New York law, and there is thus no actual conflict. <u>See</u> IPS Supp. Br. (ECF Docket No. 66) at 13-14; B.L. England Supp. Br. (ECF Docket No. 67) at 3-4. After considering the foregoing arguments of the parties, the Court concludes that it is necessary to conduct a New Jersey choice-of-law analysis.

First, the Court turns to the argument raised by Travelers that a federal court should only engage in a choice-of-law analysis "when the parties offer conflicting positions as to which state's substantive law should govern a matter." Travelers Supp. Br. (ECF Docket No. 68) at 2. Essentially, Travelers seems to take the position that because all parties cited New Jersey law in their initial briefs, the parties have stipulated to New Jersey substantive law, and it is not necessary to conduct any further inquiry. Curiously, in the case that Travelers cites in support of this assertion, the Third Circuit raised a choice-of-law issue <u>sua sponte</u> even though the parties had both briefed the matter on the assumption that New Jersey law applied. <u>Gibbs v. Carnival Cruise Lines</u>, 314 F.3d 125, 131 (3d Cir. 2002). This Court thus believes that there is some authority for it having raised the issue of choice-of-law despite the parties' mutual application of New Jersey law in their original papers. The question now is, whether the Court should apply New Jersey law because the parties have all, in effect, stipulated in their supplemental briefs that New Jersey substantive law applies. Although the Court understands that as a practical matter, it may seem harsh to force application of one body of law upon the parties when all of them agree that another body of law applies, the Court believes that it is bound by precedent to do just that under certain circumstances.

This Court recognizes that several courts of appeals have decided that it is unnecessary to be concerned about conflict of laws if all parties stipulate during the litigation as to applicable law. <u>See, e.g.</u>, <u>Auto-Owners Ins. Co. v. Websolv Computing, Inc.</u>, 580 F.3d 543, 547 (7th Cir. 2009); <u>Walter E. Heller & Co. v. Video Innovations, Inc.</u>, 730 F.2d 50, 52 (2d Cir. 1984). However, it appears to the Court that the Third

Circuit maintains a contrasting viewpoint. A Third Circuit panel has indicated that "[w]hile the stipulations of parties in the contract as to choice of law governing a contract are sometimes given effect by courts, no stipulation made after litigation has begun as to the law which is to determine it has ever been upheld so far as we know." Consol. Water Power & Paper Co. v. Spartan Aircraft Co., 185 F.2d 947, 949 (3d Cir. 1950). This approach was later followed in another Third Circuit case where the parties offered to stipulate as to the applicable body of law, but the Court rejected this approach, holding that "[t]he effectiveness of such a stipulation . . . must itself be determined by New Jersey choice-of-law principles . . . ." System Operations, Inc. v. Scientific Games Development Corp., 555 F.2d 1131, 1137 n.4 (3d Cir. 1977). See also Caton v. Leach Corp., 896 F.2d 939, 942 (5th Cir. 1990) (applying the forum state's choice-of-law rules despite mutual agreement between the parties as to which state's law applied); Kreger v. General Steel Corp., Civ. No. 07-575, 2010 WL 2902773 at *11 (E.D. La. July 19, 2010) (observing that the federal courts of appeals differ as to whether "choice of law questions can be stipulated or waived"). Because this Court knows of no New Jersey choice-of-law authority allowing parties to stipulate as to applicable law, the analysis does not end on the basis of the parties' mutual agreement that New Jersey substantive law applies.

The Court is also not convinced that the choice-of-law provision in paragraph 17 of the Agreement is limited to application in an arbitration proceeding. In Mastrobuono v. Shearson Lehman Hutton, Inc, 514 U.S. 52 (1995), the Supreme Court considered a choice-of-law provision contained in the same paragraph of a contract that provided for arbitration and suggested that it could apply even where a court, and not an arbitrator,

decides a dispute between the parties.  Id. at 59-60.  IPS cites no law in support of its

argument that the seemingly clear language providing that "[t]his Purchase Order and any

controversy relating to this Purchase Order shall be governed by the laws of the State of

New York, excluding its conflict of law principles," is limited to arbitration proceedings.

It also cites no law in support of the idea that it would be necessary to insert language

somewhere else in the purchase agreement to make a choice-of-law clause applicable.

See IPS Supp. Br. (ECF Docket No. 66) at 2.  Other courts have held that such a clause is

applied by its clear terms, despite being part of a clause that provides for arbitration.  See

Calamia v. Riversoft, Inc., Civ. No. 02-1094, 2002 WL 31779991 at *1, *5 (E.D.N.Y.

2002) (deciding that the language "[a]ny dispute or controversy shall be governed by and

construed in accordance with the substantive law of the State of New York." is a choice-

of-law provision applying to the entire contract, although contained within the clause

providing for arbitration).  The Court further does not agree that the clause in paragraph 8

nullifies the choice-of-law clause in paragraph 17.  Paragraph 8 provides that certain

invoices be accompanied by releases in "form as required by California statute."  This

clause is not at all inconsistent with the choice-of-law clause in paragraph 17, in that

paragraph 8 provides only for the format of documents and says nothing about what law

will apply to disputes under the Agreement.

   The Court is also unconvinced that because the underlying suit is a personal

injury claim, a choice-of-law provision does not apply to a related dispute over a contract

to indemnify or insure.  The law of "different states . . . may apply to different issues in a

single case. . . ."  Berg Chilling Sys. Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006).

B.L. England cites no law to support the idea that a valid choice-of-law clause would be inapplicable in a contractual dispute arising out of a personal injury case, and it seems clear to the Court that a dispute over whether the Agreement required IPS to indemnify B.L. England and procure insurance coverage for bodily injury liability is a "controversy relating to [the] Purchase Order." IPS Mot. Ex. E ¶ 17.

Because, for the foregoing reasons, the court discerns no basis for avoiding such an analysis, it will be necessary to apply New Jersey's choice-of-law principles as they apply to contract claims in order to determine whether a conflict exists, and if so, which state's substantive law should control this dispute.[3]

## B. Choice-of-Law Analysis

Under New Jersey law, the first step in determining whether to enforce a contractual choice-of-law provision is determining whether an actual conflict exists between the laws of the two states. Kramer, 371 N.J. Super at 597. "Any such conflict is to be determined on an issue-by-issue basis." Id. at 598 (citing Veazey v. Doremus, 103 N.J. 244, 248 (1986)). If there are no relevant differences between the states' laws, the Court can refer to the state laws interchangeably. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007). But if there is a distinction between the New York and New Jersey laws, an "actual conflict" will be found to exist. Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006).

---

[3] The dispute over whether the Travelers insurance policy covers the Shannon claim is a separate issue, which is the subject of Travelers' motion, but not IPS's motion. Because only the dispute between IPS and B.L. England is connected with the choice-of-law provision, it is unnecessary to conduct a step-by-step choice-of-law analysis as to the dispute over the coverage provided by the insurance policy. The terms of an insurance policy are interpreted according to New Jersey law in connection with its coverage of a New Jersey risk. Johnson Matthey, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co., 250 N.J. Super. 51, 61 (App. Div. 1991).

The dispute related to the Agreement centers around the argument by IPS that two provisions in the Agreement—the indemnification and insurance clauses—are void on public policy grounds. In New Jersey, the alleged authority for invalidating those agreements relates to a statutory provision, sometimes called an "anti-indemnity" law. The statute provides that:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract, agreement or purchase order, relative to the construction, alteration, repair, maintenance, servicing, or security of a building, structure, highway, railroad, appurtenance and appliance, including moving, demolition, excavating, grading, clearing, site preparation or development of real property connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents, or employees, is against public policy and is void and unenforceable; provided that this section shall not affect the validity of any insurance contract, workmen's compensation or agreement issued by an authorized issuer.

N.J.S.A. 2A:40A-1.[4] As it relates to this dispute, IPS takes the position that to the extent the Agreement purports to indemnify B.L. England for its "sole negligence" in connection with Shannon's injury while performing work on the maintenance contract, that promise is void and against public policy pursuant to N.J.S.A. 2A:40A-1. IPS also

---

[4] The parties use the term "construction contracts" to refer to the type of contracts controlled by this statute. The parties do not dispute that N.J.S.A. 2A:40A-1 controls their agreement, and therefore the Court also uses the term "construction contract" in this Opinion to refer to the types of contracts covered by the statute, although recognizing that the Agreement between the parties here might be more precisely described as a "maintenance" or "servicing" contract.

argues that New Jersey courts would not allow B.L. England to enforce through an insurance-procurement agreement what it could not enforce directly on public policy grounds, and that its insurance obligations should be coextensive with its indemnity obligations. As discussed herein, the New Jersey Courts have not yet spoken on the latter issue.

New York, on the other hand, also has an "anti-indemnity" law on the books that relates to construction and maintenance contracts. The New York statute is somewhat similar to New Jersey's. It provides, in relevant part, that:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable; provided that this section shall not affect the validity of any insurance contract, workers' compensation agreement or other agreement issued by an admitted insurer. This subdivision shall not preclude a promisee requiring indemnification for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of a party other than the promisee, whether or not the promisor is partially negligent.

N.Y. Gen. Obligt. Law § 5-322.1(1).  Although they are somewhat similar, New York's statute, by contrast with New Jersey's, does not use the phrase "sole" in connection with "negligence."  It appears that prior to an amendment, the New York statute used to contain the language "sole negligence," as its New Jersey analogue currently does.  See Quevado v. City of New York, 56 N.Y.2d 150, 151 (1982).  At the time when only indemnification for "sole negligence" was held to be against New York's public policy, a related insurance clause would also evidently be unenforceable.  In connection with the old statute, the New York Court of Appeals decided that

> the existence of insurance would not save an indemnification clause otherwise unenforceable under section 5-322.1.  The proviso that the section "shall not affect the validity of any insurance contract" . . . merely ensures that the contractor will not lose insurance coverage simply because the coverage may extend to liability sought to be imposed under an unenforceable agreement.

Id. at 156 n.3.  However, subsequent to the New York statute being amended to bar a party from indemnifying itself for any of its own (and not merely its "sole") negligence, New York's highest court has held that "[a]n agreement to procure insurance is not an agreement to indemnify or hold harmless," and that because "an agreement to procure insurance specifically anticipates the promisee's continued responsibility for its own negligence," such insurance procurement agreements are valid.  Kinney v. G.W. Lisk Co., Inc., 76 N.Y.2d 215, 218 (1990).

For the reasons expressed herein, this Court believes that the New Jersey courts, applying the relevant New Jersey statute, would reach a different result than if the New York anti-

indemnity statute was applied to the parties' dispute using New York law. For this reason, and because of the difference between the New York and New Jersey statutes that apply to agreements such as the one in dispute here, there is an "actual conflict" as to the issue of whether IPS was obligated to procure insurance for the sole negligence of B.L. England.

Because an actual conflict exists, it becomes necessary to determine whether the choice-of-law clause will be enforced under New Jersey's choice-of-law rules. Where the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, the choice-of-law clause will not be enforced. North Bergen Rex, 158 N.J. at 568. Here, none of the parties has produced any evidence of any relationship to New York.[5] None of the parties are citizens of New York or have a principal place of business in New York. Am. Compl. at 1-2. Travelers indicated that Rockland Capital, one of the defendants, and evidently the parent company of R.C. Cape May, has an "apparent connection" to New York.[6] See Travelers Supp. Br. (ECF Docket No. 68) at 5. However, according to the amended complaint, Rockland Capital is incorporated in Delaware, with its principal place of business in Texas. Because, to the Court's knowledge, no party to the contract has a "substantial relationship" with New York, the Court will not enforce the choice-of-law clause in the Agreement.

---

[5] The Court recognizes the possibility that perhaps no such evidence was provided in part because no party advocates for the application of New York law, but the Court must nevertheless rule based on the record before it.
[6] It appears that Travelers is referring to the maintenance of an office—although not its principal place of business— by Rockland in New York City. See http://www.rocklandcapital.com.

Absent a valid choice-of-law clause, New Jersey's choice-of-law rules indicate that the Court should look to the State with the most meaningful connections to the transaction to determine which state's law applies to a contract-based claim.  <u>Spence-Parker v. Delaware River & Bay Auth.</u>, 656 F. Supp. 2d 488, 497 (D.N.J. 2009).   The court must look to "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties."  <u>Id.</u> at 498-99 (applying Restatement (Second) of Conflicts § 188 factors).

Although not all of these relevant factors have been briefed by the parties, it seems clear that the factors weigh in favor of application of New Jersey law.  The contract had the B.L. England plant in New Jersey had as its subject matter and place of performance.  While IPS evidently has a number of relevant relationships with the forum of Pennsylvania, B.L. England and R.C. Cape May evidently have New Jersey residence, domicile, incorporation, and places of business.  <u>See</u> Am. Compl. at 1-2.  Therefore, the Court finds that with respect to the area of law where an actual conflict exists, the Court will apply New Jersey substantive law.

**IV.    DISCUSSION**

**A.  Personal Injury Claims**

IPS first argues that the personal injury claims against it should be dismissed.  IPS correctly points out that except in the case of an intentional wrong on the part of the employer, an employee's sole remedy against his employer for a workplace injury is a claim under the New

Jersey Worker's Compensation Act.  See N.J.S.A. 34:15-8; Gore v. Hepworth, 316 N.J. Super. 234, 240 (App. Div. 1998).  However, it does not appear that a personal injury claim has been asserted against IPS.  Plaintiff did not name IPS as a defendant in his complaint.  See Am. Compl. at 1.  In its Third-Party Complaint, B.L. England only alleges liability against IPS pursuant to the Agreement, and not pursuant to any alleged negligence in connection with Plaintiff's injuries.  See Third-Party Compl. at 2-3.  Therefore, this request by IPS is moot as no personal injury claims have been asserted by any party against IPS.

**B.  Indemnity**

In the First Count of its third-party complaint, B.L. England cited the indemnification provision in paragraph 11 of the Agreement, and evidently sought to enforce this clause by requiring IPS "to reimburse any judgments, jury awards or other awards that may be found against them in this matter," in addition to defense costs.  Third Party Compl. at 2-3.  In its motion for summary judgment, IPS argues that enforcement of the indemnity clause with respect to the sole negligent acts of B.L. England is prohibited by the operation of N.J.S.A. 2A:40A-1.

B.L. England makes no argument as to why summary judgment should not be granted as to its indemnity claims, and evidently now concedes that it is not entitled to indemnification under the Agreement, because negligence is not alleged against any entities other than B.L. England.  See B.L. England Br. at 3, 10.  Therefore, the motion of the third-party defendants will be granted as to the indemnity issue.

**C.  Insurance**

Although B.L. England concedes that it is not entitled to be indemnified for Shannon's claim pursuant to the Agreement, it maintains that IPS had a duty to provide primary insurance

coverage for the type of accident that caused Shannon's injury, and that Travelers must provide coverage on a primary basis under the insurance policy that IPS procured pursuant to the agreement. Because the parties do not dispute that IPS purchased an insurance policy with Travelers and that because the Agreement was a "written contract requiring insurance," B.L. England would qualify as "additional insured" under the policy for certain purposes, the Court will first address Travelers' motion and determine whether it has a duty to provide insurance coverage pursuant to the terms of its insurance policy.

    1.   Coverage Under the Travelers Policy

The policy that IPS procured with Travelers provides that "any person or organization that you agree in a 'written contract requiring insurance' to include as an additional insured" qualifies as an "additional insured" under the policy. IPS Mot. Ex. G. Travelers and B.L. England do not dispute that B.L. England could qualify an "additional insured" under the Travelers policy under some circumstances. Travelers Reply at 1. They do disagree, however, as to whether the Shannon claim is covered under the policy, and Travelers argues that for the purposes of the Shannon claim, B.L. England is not an "additional insured." Travelers Br. at 5. This does not appear to be a difficult question. The Travelers policy indicates that it covers an additional insured:

> only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

IPS Mot. Ex. G.

Travelers thus argues that B.L. England is not entitled to coverage for Shannon's claim under the Travelers policy because Shannon's complaint is based solely upon alleged negligent acts or omissions on the part of B.L. England.  <u>See</u> Travelers Reply at 4-5.  Therefore, they argue, two parts of the above policy provision cause coverage to be excluded.  First, the injury was not "caused by acts or omissions of you [IPS] or your subcontractor."  Second, Shannon's injury resulted from "the independent acts or omissions" of B.L. England.  Travelers points out that Shannon alleges B.L. England failed to maintain its premises, failed to comply with building codes, and failed to inspect the premises and warn Shannon of dangerous conditions.  Am. Compl. at ¶¶ 15-17.  The claims, Travelers argues, specifically allege "independent acts or omissions" on the part of B.L. England, and clearly omit any allegations of negligence on the part of IPS.  This, Travelers argues, would exclude B.L. England from qualifying for coverage as an "additional insured" in connection with the Shannon claim.  B.L. England concedes the fact that no negligent conduct on the part of IPS took place.  B.L. England Br. at 2 n.1.  It does not appear that either IPS or Travelers asserts that B.L. England could never be an "additional insured" under the policy pursuant to the Purchase Order Agreement.  Rather, Travelers points to the limitation of coverage pursuant to the policy language for certain claims advanced by an "additional insured."

In New Jersey, insurance policies should be construed in favor of the insured, and when the language of a policy would support two rational interpretations, a court should apply the interpretation granting coverage.  <u>Pep Boys v. Cigna Indem. Ins. Co. of N. Am.</u>, 300 N.J. Super. 245, 249 (App. Div. 1997).   When a provision in an "insurance policy is clear and unambiguous," courts are "bound to enforce the policy as it is written."  <u>French v. New Jersey</u>

School Bd. Ass'n Grp., 149 N.J. 478, 494 (1997) (internal citations omitted). Where an insurance policy does not define terms in the policy, the court should construe any ambiguity against the insurer and in favor of the insured. Property Cas. Co. of MCA v. Conway, 147 N.J. 322, 326-27 (1997). However, courts should not engage in a strained construction of terms in order to impose liability, finding ambiguity where none exists. Longobardi v. Chubb Ins. Co. of New Jersey, 121 N.J. 530, 537 (1990). Courts can look to the plain meaning of a term that is not explicitly defined in the policy, such as the definition found in a dictionary. Conway, 147 N.J. at 327. Although the policy does not define "independent acts or omissions," Black's law dictionary defines "independent" as "[n]ot subject to the control or influence of another; Not associated with another entity; Not dependent or contingent on something else." Black's Law Dictionary (8th ed. 2004).

Applying these rules of insurance policy interpretation, the Court finds that the theory of liability in Shannon's complaint relates to negligent acts or omissions by B.L. England, and that the maintenance of the premises, including the strut pipe, related to "independent acts or omissions," as the maintenance was not subject to the control of any entity other than B.L. England and the other third-party plaintiffs. The Travelers policy unequivocally excludes coverage to an additional insured such as B.L. England for its own negligent acts and omissions. It also limits the scope of liability for an additional insured to the extent that it may be held vicariously liable for the primary insured's acts, or those of the primary insured's subcontractor in indicating that it only covers an additional insured in connection with injuries "caused by acts or omissions of you or your subcontractor." Although B.L. England cites various cases where courts found that insurance coverage existed, none of the cases cited in support of its argument

20

appear to involve policies containing the exclusionary language in the Travelers policy at issue here.  For example, <u>County of Hudson v. Selective Insurance Co.</u>, 332 N.J. Super. 107, 112 (App. Div. 2010) involved policy language that covered injuries "arising out of your work for that [additional] insured." See B.L. England Br. at 6.  Here, the injury without question "arose out of" the work of IPS, as discussed in the next section.  However, unlike the insurance policy in <u>County of Hudson</u>, the Travelers policy involved in this case covers injuries "<u>caused by</u> acts or omissions of" IPS, and not merely injuries "<u>arising out of</u>" the work of IPS, which is clearly a different standard.

B.L. England further relies upon <u>Federal Home Loan Mortgage Corp. v. Scottsdale Insurance Co.</u>, 316 F.3d 431 (3d Cir. 2003).  In <u>Scottsdale</u>, after a fire at a building, the building owner sued the contractor who had performed fire alarm work at the building, along with that contractor's insurer.  <u>Id.</u> at 436.  B.L. England believes that this case supports the idea that the insurer "did have a duty to defend, irrespective of any apportionment of negligence, because the allegation of the complaint constituted a risk insured against." B.L. England Br. at 8.  Even if that is true, it does not support an argument for coverage in this case.  In <u>Scottsdale</u>, the complaints alleged problems with the fire and smoke alarm systems provided by the contractor.  As the Third Circuit observed, "the underlying complaints all contained allegations that would, if sustained, impose liability for activities within the coverage of the policy."  <u>Id.</u> at 445.  As the court explained, the point was that even if the allegations were meritless, the insurer still had a duty to defend.  <u>Id.</u> at 446.  Here, unlike in <u>Scottsdale</u>, B.L. England has pointed to no allegations in the complaint that suggest that IPS was negligent, thus triggering a duty to defend on the part of Travelers.

The other cases cited by B.L. England are similarly unhelpful. This Court must determine whether coverage is available to B.L. England based on the language in the Travelers policy, and not based on language in different policies analyzed in the cases cited by B.L. England. Courts interpreting language akin to that in the Travelers policy have found that it does not provide the coverage that B.L. England seeks. <u>See, e.g.</u>, <u>St. Paul Fire & Marine Ins. Co. v. Hanover Ins. Co</u>, 187 F. Supp. 2d 584, 589-90 (E.D.N.C. 2000) (analyzing a policy containing an identical exclusion for "independent acts or omissions of such person or organization" and determining that it limited coverage to cases where the additional insured was held vicariously liable for the primary insured's acts, and would not cover the sole negligence of the party claiming "additional insured" status).

B.L. England also seeks to interpret coverage under the policy by looking to the agreement with IPS. <u>See</u> B.L. England Br. at 5-6. B.L. England claims that Travelers "is attempting to now assert . . . that B.L. England is now not an additional insured" although IPS was required to provide such insurance coverage under the Agreement. <u>Id</u>. at 5. Any arguments about what IPS promised to do pursuant to the Agreement are unpersuasive for the purposes of determining whether Travelers owes coverage under the policy. The scope of insurance coverage is defined by the terms of the written policy, and not by the terms of an "underlying trade contract that required the named insured to purchase coverage." <u>Jeffrey M. Brown Assocs., Inc. v. Interstate Fire & Cas. Co.</u>, 414 N.J. Super. 160, 171-72 (App. Div. 2010) (internal quotations omitted). Therefore, the Court rejects any suggestion by B.L. England that it should read the Travelers policy together with the Agreement to determine what coverage exists under the insurance policy.

Because no "additional insured" coverage exists under the Policy for Mr. Shannon's claim, the next question that arises is whether IPS breached the Agreement by not putting an insurance policy in place that would cover the claim.

2. Insurance Requirement under the Purchase Order Agreement

Pursuant to the Agreement, IPS agreed to purchase sufficient insurance "to protect [IPS] and [B.L. England] from third party claims arising out of or connected with the performance of the work."  IPS Mot. Ex. E ¶ 6(b).  IPS agreed that if it did not "acquire and maintain the insurance coverage and limits set forth in this Agreement . . . Seller shall itself be liable to Buyer as an insurer to the same extent as if such insurance had been obtained."  Id. Ex. E ¶ 6(d)(iii). Therefore, if IPS agreed to maintain insurance that would have covered B.L. England for its own negligence in connection with the Shannon claim, but maintained a policy that excluded such coverage, IPS would be liable to B.L. England for breach of the Agreement.

 IPS argues that it did not breach the agreement by not procuring insurance that would have covered the Shannon claim, and that its duty to procure insurance is co-extensive with its duty to indemnify.  IPS Br. at 23-24.  IPS also argues that a premises owner cannot require another party to insure against its sole negligence with respect to property that it has sole and exclusive control over, absent an express, unambiguous provision indicating such an obligation. IPS Br. at 24-25.  Essentially, IPS seeks to extend the statutory anti-indemnity rule that prevents a party to a construction contract from being indemnified for its own negligence—absent an explicit provision for such indemnity—to the insurance context.  New Jersey courts have held that by entering into such a clear and unequivocal agreement, parties can avoid the application of N.J.S.A. 2A:40A-1 to indemnity provisions.  See Mantilla v. NC Mall Assocs., 167 N.J. 262,

272-73 (2001).  IPS asks the Court to rule that New Jersey law requires such an explicit provision to uphold an agreement to insure another party for its own negligence in connection with premises that the promisor has no control over.

Although the parties cite cases that they argue are controlling or persuasive, it appears that no New Jersey Court has answered the exact question that the parties ask this Court to decide.  That question is whether, under New Jersey law, one party to a construction contract may require a counterparty to purchase insurance covering its sole negligence, absent explicit and unequivocal language stating that the insurance will cover the sole negligence of the first party.  In the absence of controlling precedent, "a federal court sitting in diversity [is] charged with predicting how another court" would rule.  Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 253 (3d Cir. 2010).  In instances where "the state's highest court has not ruled on an issue, the 'decisions of a state intermediate appellate court are evidence of state law . . . and must be given significant weight.'"  Rustay v. Consol. Rail Corp., 775 F. Supp. 161, 164 (3d Cir. 1991) (quoting General Elec. Credit Corp. v. Ger-Beck Mach. Co., 806 F.2d 1207, 1209 (3d Cir. 1986).  Because neither the New Jersey Supreme Court nor the Appellate Division has answered the question, this Court must undertake "the inherently difficult task of predicting" what the New Jersey Supreme Court would do if it were presented with this issue.  Yohannon v. Keene Corp., 924 F.2d 1255, 1264 (3d Cir. 1991).

First, the Court observes that none of the cases cited by the parties speaks clearly on the issue before the Court.  IPS relies heavily on Pennsville Shopping Center Corp. v. American Motorists Insurance Co., 315 N.J. Super. 519 (App. Div. 1998), in arguing that it had no duty to purchase insurance that would cover Shannon's injury.  Pennsville involved an insurance

coverage dispute between a landlord, the corporate owner of a shopping center, and its tenant, a corporation which operated a supermarket in the shopping center.  Id. at 521.  A customer of the supermarket was injured when her shopping cart struck a pothole in the common area that was the responsibility of the landlord to maintain.  Id. at 521, 523.  After determining that the tenant had no duty to indemnify the landlord, the court held that the tenant's agreement "to name landlord as an additional insured must be taken to be coextensive with the scope of tenant's own liability."  Id. at 523.  (italics omitted).  The Appellate Division further held that because the landlord had sole responsibility to maintain the area and actually had agreed to indemnify the tenant, the tenant could not be required to provide insurance coverage "[a]bsent an express and unambiguous contractual undertaking to do so . . . ."  Id.

The Pennsville case is instructive, in that it suggests that as a policy matter, the entity that has exclusive control over a property should not be able to insulate itself from all liability for maintenance of the property by requiring another party to indemnify or insure it against its own solely negligent acts.  However, it does not decide the issue that the parties have presented here to the Court.  First, Pennsville was a landlord-tenant dispute, and does not involve the application of the anti-indemnity statute.  If the anti-indemnity statute operates to bar an agreement to indemnify for a party's sole negligence, but not an agreement to procure insurance for sole negligence, as B.L. England argues, the Pennsville case would not override the statute.   The Court also does not agree with the characterization of Pennsville that IPS sets forth, where it argues that "[t]he Pennsville holding is clear and unequivocal that no such duty to insure exists if a duty to indemnify is not present."  IPS Reply at 3-4.   If that were true, it would be the end of the inquiry, given that B.L. England concedes that no duty to indemnify exists here due to the

statutory bar.  Pennsville does indicate that the undertaking of the tenant to "name landlord as an additional insured must be taken to be coextensive with the scope of tenant's own liability." Pennsville, 315 N.J. Super. at 523.  However, Pennsville relied on other factors not present in the case before this Court, such as an agreement in the lease that the landlord actually indemnify the tenant for losses "resulting from Landlord's failure to carry out repairs or maintenance of the common areas."  Id. at 522.  The lease also indicated that the parking lot was the landlord's sole responsibility.  Id. at 523.  Therefore, the Court found that the underlying contract showed that the parties intended to apportion liability and insurance coverage for the common areas to the landlord.  Id.  Further, other appellate panels have found that a party can, under certain circumstances, be required to provide insurance even where it could not be compelled to indemnify.  See, e.g., Harrah's Atlantic City, Inc. v. Harleysville Ins. Co., 288 N.J. Super. 152, 159 (App. Div. 1996); Krastanov v. K. Hovnanian/Shore Acquisitions, LLC, 2008 WL 2986475 at *6 (N.J. App. Div. Aug. 6, 2008).  Therefore, even if this Court were to agree that Pennsville held that insurance obligations are always coextensive with indemnity obligations, this would not settle the issue of how the New Jersey Supreme Court would rule, given that other appellate panels have found that the two obligations are not always co-extensive.

B.L. England counters by relying on Krastanov v. K. Hovnanian/Shore Acquisitions, LLC, 2008 WL 2986475 (N.J. App. Div. Aug. 6, 2008).  Krastanov involved the death of an employee of a subcontractor at a construction site.  Id. at *1.  The employee drowned while swimming in a lake on the site.  Id.  The issue in Krastanov was whether swimming in the lake had a sufficiently substantial nexus to the work contract to constitute an injury "arising out of" the work of the subcontractor.  Id. at *9.   This question related to language in an insurance

policy provision that would determine whether the insurance carrier was required to provide coverage pursuant to the terms of its policy. The Appellate Division held that the injury did "arise out of" the work, because there was a connection between the supervision of the employees by Krastanov's employer and his death. Id. at *9-10. The Appellate Division noted that "arising out of" meant causally connected with, and not proximately caused by. Id. at *8. Therefore, coverage was not contingent on whether the subcontractor was liable. But Krastanov did not involve the application of the anti-indemnity statute, and because the court suggested that the employee's supervisors may have been negligent by not preventing him from swimming in the lake pursuant to their written agreement to supervise employees, it evidently is not a case of "sole" negligence of the premises owner. Id. at *9. Perhaps most importantly, it decided the question of whether an insurance policy would provide coverage, and not whether an agreement to procure insurance had been breached.

B.L. England also relies upon County of Hudson v. Selective Insurance Co., 332 N.J. Super. 107 (App. Div. 2000). In County of Hudson, the Court was called upon to construe language in an insurance endorsement covering incidents "arising out of" a contractor's work. There, an employee of a subcontractor slipped and fell on marble steps while at a prospective job site to prepare a bid, due to no fault of the contractor or subcontractor. The Appellate Division held that the question in interpreting "arising out of" should be whether the negligent act which caused the injury "was in the contemplation of the parties to the insurance contract . . . ." Id. at 116 (quoting Westchester Fire Ins. Co. v. Continental Ins. Cos., 126 N.J. Super 29, 38 (App. Div. 1973)). The Appellate Division held that the employee's presence at the worksite and the ensuing accident was sufficiently connected to the subcontractor's work so that it "arose out of"

the work, even without liability connected to the work on the part of the contractor or subcontractor. However, as IPS points out, the contract at issue in County of Hudson specifically provided for insurance for the sole liability of the County (the premises owner in that case). The contract provided that "[t]he coverage so provided shall protect against claims for personal injuries . . . which may arise from any act or omission of the County . . . ." Id. at 112. Unlike this part of the analysis here, the issue was also whether insurance coverage applied, and not whether the contractor breached a duty to purchase insurance. For the reasons expressed below, this is an important distinction. Finally, County of Hudson did not involve application of the anti-indemnity statute.

The Court observes that the cases cited by B.L. England do indicate that Shannon's injury "arose from" the work of IPS. "New Jersey courts have given a broad and liberal interpretation to common insurance policy language pertaining to coverage for additional insured parties for injuries 'arising out of' work performed by the main policyholder." Scottsdale, 316 F.3d at 444. The employee's death in Krastanov "arose from" the construction contract there, and his act of swimming in the lake was far more attenuated than Shannon's injury, which evidently occurred moments after stepping away from equipment he was servicing. See Krastanov, 2008 WL 2986475, at *8; IPS Br. at 1. Similarly, although the employee in County of Hudson was injured due to no negligence of the contractor or subcontractor, his injury was found to "arise out of" the work. An employee's mere presence at the worksite and ensuring injury is a sufficient nexus to conclude that the injury "arises from" the employer's work. Franklin Mut. Ins. Co. v. Security Indem. Ins. Co., 275 N.J. Super 335, 341 (App. Div. 1994); see also County of Hudson, 332 N.J. Super. at 116.

None of the cases cited by B.L. England, however, supports their argument that IPS is required to procure insurance against the sole negligence of B.L. England pursuant to the Agreement. As mentioned, none of the cases it cites involved application of the anti-indemnity statute, and all of the cases involved the construction of language in insurance policies. These cases interpret the common issue of whether an injury had a sufficient nexus to a contractor's "work" so that it would be considered to "arise out of" the work and trigger insurance coverage—an issue which is not in serious dispute here. Further, none of the cases except County of Hudson involved the sole negligence of the property owner, and pursuant to the agreement in that case, the contractor had unequivocally agreed to insure the premises owner for its own acts or omissions. County of Hudson, 332 N.J. Super. at 112.

IPS argues that because here, "B.L. England had sole and exclusive care, custody, control, operation, service and maintenance" of the area where the fall took place and the pipe that Plaintiff tripped over, they cannot be obligated to provide insurance coverage for premises they had no control over and have no duty to indemnify for. IPS Br. at 25-26. B.L. England, on the other hand, argues that this policy, rooted in Pennsville, is not applicable to the case at bar, because the holding in Pennsville only applies in the landlord-tenant context. See B.L. England Br. at 8-9.

The Court observes that a number of states have adopted anti-indemnity statutes similar to N.J.S.A. 2A:40A-1, which intend to prevent one party to a construction contract from agreeing to indemnify another party for the latter's sole negligence. See Chrysler Corp v. Merrell &

<u>Garaguso, Inc.</u>, 796 A.2d 648, 651 (Del. 2002).[7]  As a result, the issue before the Court in the

case at bar has come before the highest court of some states, and the result has not been

uniform.[8]  Because it is likely that the Supreme Court of New Jersey would consider such

decisions in formulating a holding on the present question, the Court will survey these instructive

cases from other jurisdictions.  See <u>Pippen v. NBCUniversal Media, LLC</u>, Civ. No. 12-3294,

2013 WL 4450590, at *4 (7th Cir. Aug. 21, 2013).

 The Maryland Court of Appeals[9] considered the application of a Maryland statute that is

virtually identical to N.J.S.A. 2A:40A-1.  <u>Heat & Power Corp. v. Air Prods. & Chems., Inc.</u>, 578

A.2d 1202, 1209 (Md. 1990).[10]  In the case before the Maryland court, a contractor entered into a

contract with a premises owner which required the contractor to indemnify the owner and obtain

liability insurance for all liability arising out of the performance of the contract.  <u>Id.</u> at 1204.  The

contract provided that the contractor would indemnify the owner and procure insurance coverage

with respect to liability "resulting from or arising out of or in connection with the performance of

this Contract by Contractor and Subcontractor selected by Contractor if any."  <u>Id.</u>  An employee

---

[7] For a comprehensive list of such statutes, see Restatement (Third) of Torts § 22, cmt. f.  According to this authority, thirty states have a statute that precludes obtaining indemnity for one's own negligence in the construction context, in addition to a number of states that have such statues applicable in other contexts.

[8] According to the Restatement, "some courts" uphold agreements to name a party in an insurance policy even if that party is negligent and thus indemnity is not permitted, and "that issue is left to local law."  Restatement (Third) of Torts §22, cmt. f.  <u>See also</u> Allen Holt Gwyn, Paul E. Davis, <u>Fifty State Survey of Anti-Indemnity Statutes and Related Case Law</u>, 23 Constr. Law., Summer 2003, at 26-27 (surveying the various anti-indemnity statutes and indicating that "most states have no decision directly addressing" the issue that this Court must now address— whether a contractual agreement "to name another party to the contract (or a third party) as an additional insured constitute[s] an allowable circumvention of an anti-indemnity statute.")

[9] The Maryland Court of Appeals is the highest court in that state's judicial system.

[10] The Maryland anti-indemnity statute in that case was Md. Code Ann., Cts. & Jud. Proc. § 5-305.  The Court discerns no substantive difference in the statute that would be relevant for the purposes of this discussion.  The New Jersey statute explicitly includes "hold harmless" agreements within its scope, while the Maryland statute did not.  Further the New Jersey statute contains additional language including "highway" and "railroad" contracts within the purview of the statute.  <u>Compare</u> N.J.S.A. 2A:40A-1, <u>with</u> <u>Heat & Power Corp.</u>, 578 A.2d at 1206.  The Maryland statute has since been amended and is now codified as Md. Code Ann., Cts. & Jud. Proc. § 5-401.

of the contractor was subsequently injured on the premises due to the undisputed negligence of the owner, and the owner filed a third-party complaint seeking insurance coverage and indemnification from the contractor, although admitting that it was solely negligent.  Id.  The majority declined to rule on the issue of whether the contractual provision required the contractor to insure against the owner's sole negligence, because in that case the contractor had already purchased an insurance policy that provided coverage broader in scope than it needed to be pursuant to the contract.  Id. at 1208.  Although the majority observed that "a provision in a construction contract requiring one party to purchase insurance to cover the other party's sole negligence" may "arguably be against public policy," it decided not to reach that issue.  Id.  The majority indicated that if the contractor "procured insurance which provided broader liability coverage than it was obligated to provide under the construction contract, the insurance policy would be valid and insurer would be obligated to provide coverage purchased by Contractor." Id.  However, two judges, concurring in part and dissenting in part, would have reached the issue, and in the concurring section, indicated that they would have ruled that a premises owner cannot "accomplish indirectly what it is forbidden to do directly" by enforcing a clause insuring the owner for its own sole negligence, when a clause indemnifying for sole negligence would be invalid.  Id. at 1209-11 (Eldridge, J., concurring in part and dissenting in part).  This is evidently in line with the majority's indication that "Contractor's obligations under the contract were only to provide insurance coverage to Owner for Owner's vicarious liability, not for Owner's liability as a result of its own negligence."  Id. at 1208 (majority opinion).

The Delaware Supreme Court decided a similar case interpreting a Delaware anti-indemnity statute. Chrysler Corp v. Merrell & Garaguso, Inc., 796 A.2d 648, 651 (Del. 2002).[11] That court, like Maryland's high court, held that insurance—once purchased—cannot be declared unenforceable based upon the statute, but indicated that "we agree that the requirement to purchase insurance may, under certain circumstances, be unenforceable. . . ." Id. at 649, 653.[12]

Other courts have also found that anti-indemnity statutes prohibit circumventing the statute through insurance-procurement requirements. In construing a New Mexico anti-indemnity statute similar to New Jersey's (although limited to oil and gas well construction), that state's highest court rejected an argument that the statute permitted "indemnity by insurance." Amoco Prod. Co. v. Action Well Serv., Inc., 107 N.M. 208 (1988). See also Chrysler Corp v. Skyline Indus. Servs., Inc., 528 N.W.2d 698, 705 (Mich. 1995) ("The Court of Appeals has held that it is against public policy for a party to construction or maintenance contracts to require another party to purchase insurance to cover the other party's sole negligence."); True Oil Co. v. Mid-Continent Cas. Co., No. 02-cv-1024, 2005 U.S. Dist LEXIS 48477 at *78-79 (D. Wyo. 2005) (aff'd on other grounds, 173 F. App'x 645 (10th Cir. 2006) ("The case law reviewed by

---

[11] The Delaware statute at issue is evidently substantively different from the New Jersey statute. It does not limit the prohibition on indemnification to "sole" negligence, and appears to limit promises to indemnify to the scope of the promisor's vicarious liability. See 6 Del.Code Ann. tit 6 § 2704.

[12] This Court also notes that certain other courts have gone beyond the holdings in Heat & Power Corp. and Chrysler Corp., and have found that despite the usual language that the statute "shall not affect the validity of an insurance contract," an insurance carrier may not be required to provide coverage pursuant to an unenforceable indemnification clause. See Babineaux v, McBroom Rig Bldg Serv., Inc., 806 F.2d 1282, 1284 (5th Cir. 1987) ("it would frustrate the purposes of the Act to allow [the owner] to obtain from [the insurer] the indemnification it cannot obtain from [the contractor]."). Because the Travelers policy excludes coverage by its own terms, this is not at issue in the motion the Court is presently deciding.

this Court does not suggest that an indemnitee can escape this public policy by requiring its indemnitor to procure insurance.").

Some courts, however, have found that anti-indemnity statutes do not prevent a party to a construction contract from requiring another party to insure it against the same negligent acts for which indemnification is prohibited.  See, e.g., Dalton v. Childress Serv. Corp., 432 S.E.2d 98, 101 (W.Va. 1993) ("A contract that provides in substance that A shall purchase insurance to protect B against actions arising from B's sole negligence does not violate the [anti-indemnity] statute as public policy encourages both the allocation of risks and the purchase of insurance."); W.E. O'Neil Constr. Co. v. Gen'l Cas. Co. of Ill., 748 N.E.2d 667, 672-73 (Ill. App. 2001) ("the insurance provision . . . stands separate and apart from the indemnity agreement . . . .  We conclude that the insurance provision is not tied inextricably to the indemnity agreement."); Roy Anderson Corp. v. Transcontinental Ins. Co., 358 F. Supp. 2d 553, 567 (S.D. Miss. 2005) ("If the Mississippi Supreme Court were to address this issue, the court would distinguish agreements to procure insurance coverage from agreements to indemnify. . . . [i]nsurance coverage is a separate obligation from the indemnity obligation. . . .")[13]

In addition to reviewing the approaches that other jurisdictions have taken to the issue, this court also must search for language from the New Jersey Supreme Court and Appellate

---

[13] As indicated supra, the New York Court of Appeals has also held that insurance procurement agreements in connection with a party's sole negligence are enforceable, although as noted, New York's anti-indemnity statute for construction contracts in substantively different than New Jersey's.  Kinney v. G.W. Lisk Co., Inc., 76 N.Y.2d 215 (1990).  For this reason, had the Court determined that New York substantive law applies, it seems clear under the authority of Kinney and New York's relevant statute that the insurance-procurement agreement would be enforceable by B.L. England, thus creating an "actual conflict" of state laws.  The Mississippi and Illinois statutes at issue in Roy Anderson and W.E. O'Neil also appear to be similar to New York's (and Delaware's) in not being limited to "sole negligence."  See Miss. Code Ann. § 31-5-31; 740 ILCS 35/1.

Division that might be analogous in some way or otherwise tending to show how the New Jersey Supreme Court would rule. See Travelers, 594 F.3d at 244. The Court observes that the New Jersey Supreme Court has found as a policy matter that premises owners are generally in the best position to control the risk of harm as a result of some dangerous condition on the premises. Butler v. Acme Markets, Inc., 89 N.J. 270, 284 (1982). "Ownership or control of the premises . . . enables a party to prevent the harm." Kuzmicz v. Ivy Hill Park Apartments, Inc., 147 N.J. 510, 517 (1997).

The Court also finds that the Pennsville case is persuasive, in that it indicates a policy against enforcing insurance procurement agreements when the party seeking coverage has sole control of the property. Pennsville, 315 N.J. Super. at 523.[14] While B.L. England argues that it is inapplicable because it should be limited to the landlord-tenant context, B.L. England has made no compelling legal or policy argument as to why the rule should be different in the construction context. They argue that "[a]pplying the holding of Pennsville to this case would render any contractor free from their duty to provide insurance coverage, because they did not own the property in question, which would render these insurance agreements between parties, effectively useless." B.L. England Br. at 9. The Court does not agree that such a holding would render insurance agreements useless. It appears, for example, that the Agreement would still

---

[14] IPS also cites a recent unpublished Appellate Division case in both its moving and reply briefs. That case held that a landlord was not entitled to insurance from a tenant, when the tenant had sole responsibility for the premises. Davis v. 1982 Springfield Avenue, LLC, 2012 WL 5512547 at *5 (N.J. App. Div. Nov. 15, 2012). Like the Pennsville court, it held that the obligation to provide insurance would be coextensive with the tenant's own liability. Id. at *6. It observed that the premises owner "exercised exclusive control over the location of the fall and its sole negligence caused the dangerous condition." Id. at *3. Because this unpublished case closely tracks the Pennsville holding and does not appear to extend the Pennsville holding in any way, the Court sees no reason to discuss it separately.

require IPS to insure and indemnify B.L. England for losses that result from B.L. England being held vicariously liable for the acts of others.  In fact, the Agreement would still have full effect for any loss that was the result of the joint negligence of B.L. England and IPS or its subcontractors, or any other loss not the result of the sole negligence of B.L. England.  Further, if the parties here wished to indemnify and insure B.L. England for its sole negligence, they could have explicitly and unequivocally indicated in the contract that IPS would indemnify and/or insure B.L. England for its own sole negligence.  They also could have explicitly indicated that coverage would be provided for all persons on the premises during performance of the contract.  The parties did not include such explicit language in the contract.  IPS agrees that a party may contract to insure and indemnify for another party's sole negligence <u>if</u> there is clear, unequivocal language that this is the case, but no such unequivocal language exists in the Agreement.  <u>See</u> IPS Br. at 19.

    In the absence of controlling authority from the New Jersey state courts, this Court believes that the New Jersey Supreme Court would find that a contractor's undertaking to name a premises owner as an additional insured would be considered coextensive with the contractor's own liability.  The Court finds that the New Jersey Supreme Court would find that the insurance clause in the Agreement is essentially a back-door attempt at the statutorily prohibited result of indemnification for its own sole negligence, and is thus void.  The Court believes that, consistent with the holdings of the high courts of Delaware and Maryland, the portion of N.J.S.A. 2A:40A-1 that provides that "this section shall not affect the validity of any insurance contract" means that had IPS purchased insurance that by its terms covered the sole negligence of B.L. England, that insurance carrier could not attempt to avoid coverage by looking outside of the four corners

of its own policy and relying upon the statute to relieve it of its policy obligations.  See Heat & Power Corp., 578 A.2d at 1208; Chrysler Corp, 796 A.2d at 653.

However, where the New Jersey anti-indemnity statute prohibits an owner from seeking indemnification from a contractor for its own negligence absent clear and unequivocal language, it cannot achieve a different result by requiring the contractor to procure insurance for the same indemnity obligation.  This would frustrate the public policy underlying the anti-indemnity statute.  The aim of the statute is evidently to ensure that an indemnified party continues to have an interest in avoiding accidents.[15]  To allow indemnification by insurance would be to accomplish indirectly what is directly prohibited.  The Court finds that the New Jersey statute is identical to the Maryland statute discussed in Heat & Power Corp. in its application to contracts such as the one at issue here, and that the agreement between the contractor and the property owner there created the same rights as the agreement between IPS and B.L. England.[16]  The court agrees with the analysis of the majority in that case that the obligations of the contractor "were only to provide coverage to [the property owner] for [the property owner's] vicarious liability," and not for "its own negligence."  Heat & Power Corp., 578 A.2d at 1208.  The court

---

[15] For a background on the legislative history of N.J.S.A. 2A:40A-1, see Grippo v. Schrenell and Co., 223 N.J. Super. 154, 160 (App. Div. 1988).  High courts in other jurisdictions have explicitly found that the purpose of anti-indemnity statutes is to promote safety.  See Amoco Prod. Co. v. Action Well Serv., 107 N.M. 208 (1988) ("the public policy behind [the anti-indemnity statute] is to promote safety") (citation omitted); Getty Oil Co. v. Insurance Co. of N. Am., 845 S.W.2d 794, 803 (Tex. 1992) (purpose of anti-indemnity statute is to hold a party to an agreement "responsible for the results of his own actions and for the actions of those persons over whom he exercises control.")

[16] Compare Heat & Power Corp., 578 A.2d at 1204 (contractor agreeing to obtain insurance for "injury to . . . any persons . . . resulting from or arising out of or in connection with the performance of this Contract . . . .") with IPS Mot. Ex. E ¶ 6 (IPS agreeing to procure insurance for "third-party claims arising out of or connected with the performance of the Work.").

also agrees with the analysis of the concurring opinion that the anti-indemnity statute would "void such a provision" requiring that the contractor obtain insurance coverage. Id. at 1209.

The Court recognizes that the decision rendered pursuant to this Opinion may not be the only sensible interpretation of New Jersey law. The fact that different jurisdictions have arrived at different conclusions as to the application of analogous statutes indicates that there is more than one reasonable conclusion. In acknowledging that predictive exercises as to how state courts would rule can be difficult, the Third Circuit indicated that "where 'two competing yet sensible interpretations' of state law exist," a federal court should "opt for the interpretation that restricts liability. . . ." Travelers, 594 F.3d at 253 (citing Werwinski v. Ford Motor Co., 286 F.3d 661, 680 (3d Cir. 2002)). The only other rational outcome in this case would be to hold that no insurance coverage existed for the Shannon claim under the Travelers policy, and that IPS had therefore breached its promise to purchase insurance pursuant to the Agreement. Such a finding would announce an expansion of liability under New Jersey law for the reasons discussed herein. Thus, even if both approaches were equally sensible, the policy of restricting liability dictates that the Court should enter Summary Judgment in favor of IPS.[17]

IV.     **CONCLUSION**

For the foregoing reasons, the motions for summary judgment by IPS and Travelers will be **GRANTED**. The cross-motion for summary judgment by B.L. England, Rockland Capital and R.C. Cape May will be **DENIED**. An appropriate order shall enter.

_____

[17] The Court does not address Travelers' claim that the PO does not require coverage because Shannon was not a "third party." See Travelers Reply at 10-11. This issue was first raised in the reply brief, meaning that B.L. England did not have an opportunity to respond. Further, for the reasons expressed in this Opinion, it is not necessary to reach this issue.

Dated:  11/27/2013                                    /s/ Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge